IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CYNTHIA TAWES, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-17-2375 |
| BOARD OF EDUCATION OF SOMERSET COUNTY, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Cynthia Tawes ("Plaintiff" or "Tawes"), as parent and next friend of the minor child, J.W., originally filed this eleven-count Complaint in the Circuit Court for Somerset County, Maryland, against Defendants Board of Education of Somerset County ("BOE"), Superintendent of Schools for Somerset County – Dr. John B. Gaddis ("Gaddis"), John Doe #1, John Doe #2, and John Doe #3. (ECF No. 2.) The gravamen of this case involves her allegations that her minor son J.W. was bullied by other students while attending the 2014 Secondary Summer School Program at Washington High School in Somerset County. Specifically, it is alleged that J.W. is a student who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and ultimately Oppositional Defiant Disorder ("ODD") and Major Depressive Disorder ("MDD"). Accordingly, consistent with the mandates of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, J.W. has been eligible to receive special education instruction and

1

support services. These services included his attendance at the 2014 Secondary Summer School Program.

As to the Defendants BOE and Gaddis (jointly referred to as "Defendants"), Plaintiff alleges: negligence (Count I); negligence *per se* (Count II); deprivation of a right to a free appropriate public education under 42 U.S.C. § 1983, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and U.S. Const. Amend XIV (Count III); wrongful expulsion under Md. Code Ann., Educ. § 7-305 (Count IV); deprivation of constitutional rights under 42 U.S.C. §§ 1985, 1986 and U.S. Const. Amend XIV (Counts V, VI); violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* (Count VII); and educational malpractice (Count VIII). Tawes additionally alleges assault and battery against John Doe #1 (Count IX) and John Doe #2 (Count X), and invasion of privacy, unlawful use of photograph/personal depiction against John Doe #3 (Count XI).

Currently pending before this Court is Defendants' Motion to Dismiss Counts I-VIII. (ECF No. 7.) Specifically, the Motion does not address Counts IX-XI alleging state causes of action.[1] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss (ECF No. 7) is GRANTED with respect to Counts I, II, III, V, VI, VII, and VIII. The remaining state law claims set forth in Counts IV, IX, X and XI are REMANDED back to the Circuit Court for Somerset County, Maryland.

---

[1] Plaintiff has yet to identify John Doe #1, John Doe #2, or John Doe #3, and they are not represented by undersigned counsel in the Motion to Dismiss. (*See* ECF No. 7 at 1, n. 1.) As explained below, these state law claims are remanded to the Circuit Court for Somerset County, Maryland.

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). J.W. was a student in Somerset County Public Schools ("SCPS") from kindergarten until the summer before his eighth grade year. (ECF No. 2 at ¶¶ 8, 47, 53.) He was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in kindergarten, and as a result, SCPS created an Individualized Education Plan ("IEP") to provide him with special education services, as mandated by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (*Id.* at ¶¶ 9-10.) On May 28, 2013, near the end of J.W.'s sixth grade year, Maple Shade Youth & Family Services, Inc. ("Maple Shade") performed a psychological assessment of J.W. and diagnosed him with ADHD, Oppositional Defiant Disorder ("ODD"), and problems with academics. (*Id.* at ¶ 14.) The findings and diagnoses made by Maple Shade were provided to SCPS, the Somerset Intermediate School, and J.W.'s IEP team. (*Id.* at ¶ 16.)

In seventh grade, J.W. received failing grades. (*Id.* at ¶ 18.) At some point near the end of that 2013-2014 school year, J.W. was informed that he would need to attend the 2014 Secondary Summer School Program (the "Program") in order to advance to the eighth grade. (*Id.*) On May 12, 2014, J.W.'s IEP team performed their annual meeting and assessment of J.W. (*Id.* at ¶ 19.) While the IEP team focused on his ADHD diagnosis, they did not "list, incorporate, or mention J.W.'s diagnosis of ODD or problems with academics." (*Id.* at ¶ 20.) At this meeting, the IEP team also determined that J.W. was not eligible for Extended Year Services, which would have provided special education services to him during the Program. (*Id.* at ¶ 21.) On May 17, 2014, after the IEP team's annual review,

Maple Shade again performed a psychological assessment of J.W. and diagnosed him with Major Depressive Disorder ("MDD"). (*Id.* at ¶ 15.)

J.W. attended the 2014 Program held at Washington High School for grades six through twelve. (*Id.* at ¶¶ 4, 22, 26.) On the morning of July 3, 2014, he was walking in the hallway to class after breakfast when John Doe #1 grabbed J.W. from behind and "forcibly dragged him into the men's restroom," and a group of students followed.[2] (*Id.* at ¶ 33.) Another student, John Doe #2, "began to taunt, antagonize, threaten, harass and bully" J.W. and then "physically assaulted" him. (*Id.* at ¶ 36-38.) Another student, John Doe #3, recorded the assault of J.W., presumably using a cellphone. (*Id.* at ¶ 39.) The assault stopped when they heard that a male staff member was coming, and most of the students left the restroom. (*Id.* at ¶ 42.) After this incident, J.W. completed the school day. (*Id.* at ¶ 44.) Within the days following the incident, John Doe #3's video recording was "posted and published to several online social and multimedia websites." (*Id.* at ¶ 45.)

On or about Monday, July 7, 2014, J.W. was called to the principal's office and was shown the video recording. (*Id.* at ¶ 46.) J.W. stated that he did nothing wrong, and the principal did not ask any further questions. (*Id.*) Later that day, he was expelled from the Program. (*Id.* at ¶ 47.) J.W.'s mother did not receive any verbal or written notice that J.W. was expelled or any information about subsequent administrative options or procedures. (*Id.* at ¶ 48.) In addition, no accommodations were made for J.W. following his expulsion. (*Id.* at ¶ 50.) When J.W.'s mother contacted SCPS to determine what credits J.W. earned from

---

[2] J.W. and John Doe #1 previously had two verbal altercations in class, and J.W. was sent to the administration by his teacher as a result. (*Id.* at ¶¶ 28-32.) No incident reports were created regarding these two prior incidents. (*Id.*)

4

the Program, SCPS informed her that J.W. passed and would be eligible for the eighth grade. (*Id.* at ¶ 52.) However, SCPS refused to provide her with information about the expulsion. (*Id.* at ¶ 58.) After she brought the incident to the attention of the Assistant Superintendent of Instruction, she received a letter that stated that staff members' actions related to J.W.'s expulsion were appropriate. (*Id.* at ¶ 59.)

As a result of the incidents that occurred at the Program, J.W. was unwilling to reenroll in school at SCPS. (*Id.* at ¶ 53.) He was subsequently diagnosed with Post Traumatic Stress Disorder and Manic Depressive Disorder with suicidal ideation, which caused him to "[e]lope from his new school and home on more than one occasion, and ultimately being committed to Dover Behavioral Health." (*Id.* at ¶ 55.) After he was released from Dover Behavioral Health, he continued to receive mental health treatment that consisted of psychological evaluations twice a week and psychotherapy sessions five times a week. (*Id.* at ¶ 56.) J.W. presently receives mental health treatment in response to these alleged incidents. (*Id.* at ¶ 57.) The Plaintiff Tawes filed this Complaint in the Circuit Court for Somerset County.[3] (ECF No. 1 at 1.) On August 18, 2017, Defendants timely filed a Notice of Removal to this Court, asserting federal question jurisdiction under 28 U.S.C. § 1331. (*Id.* at 2.)

## STANDARD OF REVIEW

A motion to dismiss for failure to exhaust administrative remedies is governed by Federal Rule of Civil Procedure 12(b)(1), which requires dismissal when the court lacks

---

[3] For each of the eight counts Plaintiff levies against Defendants, Plaintiff seeks $100,000 in compensatory damages, plus interest, reasonable attorney's fees, and costs of this action. (*Id.* at ¶¶ 68, 79, 93, 97, 102, 108, 113, 122.) Plaintiff also seeks $100,000 in compensatory and punitive damages, plus interest, reasonable attorney's fees and costs of this action for each claim against John Doe #1, John Doe #2, and John Doe #3. (*Id.* ¶¶ 127, 132, 141.)

subject matter jurisdiction.[4] *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md. 2003); *Clarke v. DynCorp Intern. LLC*, 962 F.Supp.2d 781, 786 (D. Md. 2013). The plaintiff bears the burden to show that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), which authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

## ANALYSIS

### I. Plaintiff failed to exhaust her administrate remedies for her Individuals with Disabilities Education Act ("IDEA") Based Claims

Five of Plaintiff's claims asserted against Defendants– negligence (Count I), negligence *per se* (Count II), violation of the Individuals with Disabilities Education Act ("IDEA") (Count III), violation of 29 U.S.C. § 705 ("Section 504") (Count VII), and

---

[4] While the Defendants' Motion to Dismiss was predicated on Rule 12(b)(6), there is clear reference to the Plaintiff's failure to exhaust administrative remedies under the IDEA. (ECF No. 7-1 at 26.)

educational malpractice (Count VIII)– allege that her son J.W. was deprived of a free appropriate public education ("FAPE") guaranteed to him under the IDEA during the 2014 Secondary Summer School Program (the "Program"). (ECF No. 2.) As explained below, all of these claims either directly or indirectly assert IDEA violations. Accordingly, the IDEA and Maryland law require Tawes to exhaust her administrative remedies before filing an action in this Court, which she has failed to do.

### A. Individuals with Disabilities Education Act (IDEA) claim (Count III)

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, ensures that children with disabilities receive needed special education services. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 748 (2017). Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To ensure the delivery of a free appropriate public education (FAPE), the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined through evaluation to be learning disabled. 20 U.S.C. § 1414(d).

Defendants argue that Plaintiff's IDEA claim should be dismissed for failure to exhaust administrative remedies. (ECF No. 9-1 at 25-27.) The IDEA requires that a dissatisfied parent exhaust administrative procedures before seeking redress in the district courts. *Fry*, 137 S. Ct. at 748. "The district court's jurisdiction under the IDEA is limited to review of the final 'findings and decision' of the administrative proceedings." *A.H. by &*

*through H.C. v. Craven Cty. Bd. of Educ.*, No. 4:16-CV-282-BO, 2017 WL 3493612, at *2 (E.D.N.C. Aug. 14, 2017) (citing 20 U.S.C. § 1415(i)(2)(A)). "The IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to resolve educational disputes." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982) (emphasizing that courts lack the expertise to resolve questions of educational policy)); *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007) ("Once the state educational agency has reached its decision, an aggrieved party may commence suit in federal court[.]"). Therefore, a plaintiff's failure to exhaust administrative remedies deprives the federal courts of subject matter jurisdiction over an IDEA claim. *See, e.g., A.H.*, 2017 WL at *2 (citing *M.M. ex rel. D.M. v. School Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002)).

The IDEA provides the following step-by-step process for filing a grievance under the IDEA if a parent is dissatisfied with the services provided by a school to the child, as prescribed by the child's IEP:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). *See* § 1415(b)(6). That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, *see* § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); see § 1415(f)(3)(A)(i). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(i). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. *See* § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. *See* § 1415(i)(2)(A).

*Fry*, 137 S. Ct. at 749. In Maryland, a person wishing to file suit under the IDEA must first file a petition with the Maryland Office of Administrative Hearings ("OAH"). Md. Code Regs. 13A.05.01.15; 34 C.F.R. 300.504. The OAH then conducts due process hearings pursuant to the provisions of the IDEA. *J.R. v. Smith*, No. DKC 16-1633, 2017 WL 3592453, at *2, n.2 (D. Md. Aug. 21, 2017) (citing Md. Code Ann., Educ. § 8-413; Md. Code Regs. 13A.05.01.15(C)).

Neither the Complaint (ECF No. 2) nor Plaintiff's Opposition (ECF No. 9) indicate that Plaintiff took any administrative steps required under the IDEA.[5] As this Court's jurisdiction of an IDEA claim is limited to review of prior administrative proceedings, this Court does not have jurisdiction to hear Plaintiff's claim and Count III is dismissed.[6]

### B. Denial of FAPE Claims (Counts I, II, VII, VIII)

Plaintiff brings additional claims alleging that her son was denied a FAPE by Defendants' failure to provide related accommodations or special education services to J.W. Although Plaintiff does not bring these claims under the IDEA, because the gravamen of her claims is the denial of a FAPE to a child, the IDEA exhaustion requirements still apply. As the United States Supreme Court recently explained in *Fry*, "if a suit brought under

---

[5] Plaintiff asserts, without citing any applicable law, that "[p]arents need not exhaust IDEA's administrative remedies where the state or local agency's procedures would be inadequate or futile." (ECF No. 9 at 5.) Plaintiff seems to confuse the administrative remedies provided under the IDEA with administrative remedies for a state law claim for wrongful expulsion. (*See id.* at 2-4.) Plaintiff states that "there was no decision, or action, for Plaintiff to appeal." (*Id.*) There was no administrative decision for Plaintiff to appeal in this case, because Plaintiff never filed a complaint with the proper administrative agency. Md. Code Regs. 13A.05.01.15.

[6] Within her IDEA claim, Plaintiff also makes passing reference to 42 U.S.C. § 1983 and the Fourteenth Amendment. (*See* ECF No. 2 at ¶¶ 90-91.) In their Motion to Dismiss, Defendants raised arguments against Plaintiff's characterization of her IDEA claim as also a claim under Section 1983 and the Fourteenth Amendment. (*See* ECF No. 7-1 at 8-11.) Plaintiff did not respond to any of these arguments in her Opposition (*see* ECF No. 9), and therefore, concedes these assertions to the Defendants. Further, "[Plaintiff] cannot sue under section 1983 for alleged IDEA violations." *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 532 (4th Cir. 1998).

9

[another law protecting children with disabilities] seeks relief that is also available under the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures." 137 S. Ct. at 748. Under IDEA Section 1415(l), "a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available,' . . . [and] a court should look to the substance, or gravamen, of the plaintiff's complaint to determine whether the suit seeks relief for a denial of FAPE." *Id.* at 752. *Fry* provided the following practical test to determine whether the gravamen of a complaint concerns the denial of a FAPE:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is . . . no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756. First, as explained above, Plaintiff has brought an IDEA claim based on identical facts to those used to support these claims under other laws designed to protect children with disabilities. Second, considering the *Fry* test, Counts I, II, VII, and VIII could only be brought in a school setting and only a child could allege the denial of the provision of accommodations per an IEP. Accordingly, because Plaintiff is seeking relief that is available under the IDEA, per *Fry,* she must meet the administrative exhaustion requirements of the IDEA and Maryland state law before bring suit in a district court. *Fry*, 137 S. Ct. at 748. As

explained above, Plaintiff has not exhausted the administrative remedies available under the IDEA. Accordingly, Counts I, II, VII,[7] and VIII are dismissed.

## II. Plaintiff fails to state a claim under 42 U.S.C. §§ 1985, 1986 (Counts V, VI)

Plaintiff alleges that Defendants conspired to interfere with J.W.'s civil rights in violation of 42 U.S.C. § 1985 (Count V) and knew of such conspiracy in violation of 42 U.S.C. § 1986 (Count VI). (ECF No. 2 at ¶¶ 98-108.) A § 1985 claim requires an invidiously discriminatory motive on behalf of defendants, *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993), and concrete facts which would demonstrate that defendants entered into an agreement to deprive Plaintiff of constitutional rights. *Justice v. Hussey*, No. 5:15-CV-546-BO, 2016 WL 1601193, at *3 (E.D.N.C. Apr. 20, 2016), *aff'd*, 670 Fed. App'x. 785 (4th Cir. 2016) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Plaintiff, however, fails to state a claim for civil conspiracy under § 1985 because she has not alleged any invidiously discriminatory motive of the Defendants or any concrete facts that would support the conclusion that Defendants entered into an agreement to deprive J.W. of his constitutional rights. Rather, her § 1985 assertions are conclusory statements that are insufficient to survive a motion to dismiss under Rule 12(b)(6). *See Twombly*, 550 U.S. at 555; *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

As to Plaintiff's § 1986 claim, a claim under 42 U.S.C. § 1986 depends on the proper foundation of a 42 U.S.C. § 1985 claim. *See Sellner v. Panagoulis*, 565 F. Supp. 238, 248-49 (D. Md. 1982), *aff'd*, 796 F.2d 474 (4th Cir. 1986) ("*A fortiori,* [plaintiff] fails to state a claim for

---

[7] Plaintiff only makes passing reference to "Title VII" in the Complaint with no statutory reference for her claim. Count VII thus merely recasts Plaintiff's claims for denial of a FAPE under the IDEA, as Plaintiff herself states in her Opposition. (*See* ECF No. 9.)

relief under section 1986 'since that section merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985.'" (quoting *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir. 1980))). Thus, the dismissal of the Plaintiff's § 1985 claim necessitates the dismissal of Plaintiff's § 1986 claim.

Even if Plaintiff stated plausible claims under §§ 1985 and 1986, Defendants further argue that Gaddis is shielded by statutory and qualified immunity on these claims. (ECF No. 7-1 at 11-16.) Plaintiff failed to respond to Defendants' arguments, except to recast these counts as a "failure to provide JW with An Adequate Education." (ECF No. 9 at 4.) By failing to respond to Defendants' arguments, Plaintiff concedes these claims to Defendants. *See, e.g.*, *McRae v. Westcor Land Title Ins.,* No. RWT-16-2332, 2017 WL 1239682, at *3 (D. Md. Mar. 17, 2017) (determining that where plaintiff ignored defendant's argument and failed to address the issue whatsoever, Plaintiff conceded the point); *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."). Therefore, Counts V and VI are properly dismissed.

### III. Plaintiff's remaining state law claims are remanded back to the Circuit Court for Somerset County, Maryland

For the above stated reasons, all of Plaintiff's federal claims are dismissed. Remaining are Plaintiff's state law claims of wrongful expulsion against Defendants (Count IV), assault and battery against John Doe #1 (Count IX) and John Doe #2 (Count X), and invasion of privacy, unlawful use of photograph/personal depiction against John Doe #3 (Count XI). (ECF No. 2.) Given that this Court dismisses all of Plaintiff's federal claims, and the case is

at the early stage of the proceedings,[8] this Court declines to exercise pendent jurisdiction over the remaining state law claims. *Gunsay v. Mozayeni*, 695 Fed. App'x. 696, 703 (4th Cir. 2017) ("When coupled with the fact that the district court properly dismissed Plaintiffs' federal claims that served as the basis of the court's original jurisdiction, . . . [there is an] adequate basis for the district court to exercise its discretion to decline to retain jurisdiction over Plaintiffs' state-law claims.").

When a district court declines to exercise pendent jurisdiction over state law claims originally brought in state court, it has the discretion to remand the case back to that state court. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614 (1988) ("A district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). "The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id.* This case was originally filed in state court and it is therefore within this Court's discretion to remand Plaintiff's state law claims back to the Circuit Court for Somerset County. *See Safar v. Tingle*, 859 F.3d 241, 257 (4th Cir. 2017) ("[W]e have recognized that in declining supplemental jurisdiction . . . 'a court may dismiss the claim or, if it was removed, remand it to State court.'" (quoting *Hinson v. Norwest Fin. South Carolina*, 239 F.3d 611, 616 (4th Cir. 2001))); *Wood v. Crane Co.*, 764 F.3d 316, 321 (4th Cir. 2014) ("'[A] federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims

---

[8] In fact, Plaintiff has yet to identify Defendants John Doe 1, 2, and 3.

13

have been eliminated.'" (quoting *Carnegie-Mellon*, 484 U.S. at 345)). Accordingly, the remaining state law claims set forth in Counts IV, IX, X, and XI are REMANDED back to the Circuit Court for Somerset County.

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 7) is GRANTED as to Counts I, II, III, V, VI, VII, and VIII and those claims are DISMISSED. The remaining state law claims set forth in Counts IV, IX, X and XI are REMANDED back to the Circuit Court for Somerset County, Maryland.

A separate Order follows.

Dated: December 11, 2017

\_\_\_\_/s/_____
Richard D. Bennett
United States District Judge